UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER G. and CHARLES G.,

Plaintiffs,

v.

ART CENTER, INC., d/b/a NORTHWEST
COLLEGE OF ART, et al.,

Defendants.

CASE NO. C04-5011JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross-motions for summary judgment. (Dkt. ## 112, 115).  The court has reviewed the parties' submissions and has heard oral argument.  For the reasons stated below, the court DENIES Plaintiff's summary judgment motion and GRANTS Defendants' summary judgment motion in part and DENIES it in part.

## II.  BACKGROUND

Plaintiff Jennifer Grentner was a student at Northwest School of Art ("Northwest"), which Defendant Art Center, Inc. operates.  In early December 2002, Northwest officials received notice that a student had planned to poison Amy Weber, an instructor at Northwest.  Northwest hired an attorney to interview witnesses and report

ORDER – 1

his findings.  By December 13, 2002, the attorney informed Northwest that Ms. Grentner had told other students that she would like to put Visine eye drops in Ms. Weber's coffee. The investigator confirmed that Visine would have no harmful effects on Ms. Weber.

On December 17, 2002, Northwest's founder and director, Craig Freeman, posted an open letter to Northwest students, staff, and faculty.  Adler Decl. Ex. 3.  The letter noted "a serious threat made by [Northwest] students to 'poison' instructor Amy Weber." Id.  The letter stated that the school had investigated the matter and that a resolution was forthcoming.  The letter did not name any student.  In January 2003, Northwest suspended Ms. Grentner for one semester.

In 2003, Ms. Grentner brought a defamation claim against Northwest in Kitsap County Superior Court, based on the publication of Mr. Freeman's December 17, 2002 open letter to the Northwest community and the events that followed, including Ms. Grentner's suspension.  That court granted summary judgment against Ms. Grentner's defamation claim, and the Washington Court of Appeals affirmed.

In this litigation, Ms. Grentner repeats the allegations of defamation arising from the December 17 letter, and also alleges that Defendant Weber told Northwest faculty members and students at various times in 2002 that Ms. Grentner was a drug dealer.  She alleges that Defendant Freeman repeated those allegations to at least one faculty member.

The parties each seek summary judgment on Ms. Grentner's defamation claim.

## III.   ANALYSIS

On a motion for summary judgment, the court is constrained to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex

ORDER – 2

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  Where a question presented is purely legal, summary judgment is appropriate without deference to the non-moving party.

**A.    Disputed Issues of Fact Prevent Summary Judgment in Plaintiff's Favor.**

Under Washington law, a claim of defamation requires the unprivileged publication of a false statement to a third party that causes damages.  Because Ms. Grentner is undisputedly a "private individual," she need only prove that the Defendants negligently published a false statement about her.  Taskett v. King Broadcasting Co., 546 P.2d 81, 86 (Wash. 1976).  The burden of proving that the allegedly defamatory statement was false is on Ms. Grentner.  Mohr v. Grant, 108 P.3d 768, 773 (Wash. 2005).  She also bears the burden of establishing that no privilege protected the Defendants' statements.  LaMon v. Butler, 770 P.2d 1027, 1029 (Wash. 1989).  Finally, she must prove that the defamatory statements damaged her, unless she can prove that the statements were defamatory per se, in which case damages are presumed.  Maison de France, Ltd. v. Mais Oui!, Inc., 108 P.3d 787, 798 (Wash. Ct. App. 2005).  An accusation of a criminal offense of moral turpitude is defamatory per se.  Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters, 670 P.2d 240, 245 (Wash. 1983).

The alleged defamatory statements in this litigation fall into three categories:  (1) statements Ms. Weber and Ms. Freeman made to Northwest faculty members about Ms. Grentner's drug-related activities; (2) statements Ms. Weber made to Northwest students about those activities; and (3) statements Mr. Freeman made in the December 17, 2002 letter discussing a threat to "poison" Ms. Weber.

ORDER – 3

With respect to the first two categories, numerous factual disputes prevent Ms. Grentner from establishing defamation as a matter of law.  Most obviously, both Ms. Weber and Mr. Freeman deny telling anyone that Ms. Grentner was a drug dealer.  They claim that, at most, they shared their suspicions that Ms. Grentner might be using drugs. They also offer evidence that their suspicions were valid.  These factual disputes, by themselves, are a sufficient basis to deny Plaintiff's motion for summary judgment.

**B.     The Defendants Are Entitled to Summary Judgment as to Privileged Statements Made Among Members of the Northwest Faculty.**

Defendants seek summary judgment because they contend that Ms. Grentner cannot, as a matter of law, establish that statements to other faculty members about her drug activities were unprivileged.  Two privileges might apply.  The first is the common interest privilege, a qualified privilege protecting communications between a "declarant and the recipient [who] have a common interest in the subject matter of the communication."  Moe v. Wise, 989 P.2d 1148, 1154 (Wash. Ct. App. 1999) ("The rule is based on the fact that one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them.").  The second is a closely related qualified privilege "for communications made between corporate representatives when the employees are acting in the ordinary course of their work." Boring v. Alaska Airlines, Inc., 97 P.3d 51, 56 (Wash. Ct. App. 2004).  That privilege extends to communications among school faculty and staff.[1]  Doe v. Gonzaga Univ.,  24 P.3d 390, 397 (Wash. 2001), rev'd on other grounds, Gonzaga Univ. v. Doe, 534 U.S. 1103 (2002).

---

[1]The Doe court went even further, suggesting that communications among staff and faculty are "not the kind of 'publication' required to support a defamation claim."  Doe v. Gonzaga Univ., 24 P.3d 390, 397 (Wash. 2001).  Because Defendants do not press this reasoning, the court declines to decide whether the intra-faculty statements here were "published" for purposes of Plaintiff's defamation claim.

ORDER – 4

The court concludes that Northwest's interest in communication amongst its staff and faculty regarding student drug use or drug dealing is a sufficient basis to invoke the common interest privilege. Whether a privilege applies is a question of law for the court. Moe, 989 P.2d at 1154. With one exception (see infra Sect. III.C.), Defendants made all of their allegedly defamatory statements about Ms. Grentner's drug-related activity at Northwest faculty meetings or, in one case, in a faculty member's office. Defendants argue that "Mr. Freeman and Ms. Weber . . . had a need to speak openly and freely with . . . members of the faculty at faculty conferences about drug use [in the student body]." Defs.' Mot. at 13. The court has closely examined the evidence, and concludes that each allegedly defamatory statement was made among Northwest faculty members in a context implicating Northwest's interest in monitoring student drug use or trafficking. The court therefore holds that both the common interest privilege and the privilege for intra-faculty communication protect these statements. See Doe, 24 P.3d at 397-398.

The existence of these two privileges does not end the court's inquiry. Defendants can lose either privilege if they abuse them. Moe, 989 P.2d at 1157. A defendant abuses a privilege if he or she:

> (1) knows the matter to be false or acts in reckless disregard as to its truth or falsity of the statement [or, in other words, acts with 'actual malice']; (2) does not act for the purpose of protecting the interest that is the reason for the existence of the privilege . . . ; (3) knowingly publishes the matter to a person to whom its publication is not otherwise privileged . . . ; (4) does not reasonably believe the matter to be necessary to accomplish the purpose for which the privilege is given . . . ; or (5) publishes unprivileged as well as privileged matter.

Moe, 989 P.2d at 1157 (internal citations omitted).

In opposing a defendant's motion for summary judgment, a defamation plaintiff must make out a prima facie case of each element of his claim, including, when applicable, abuse of a privilege. Alpine Indus. Computers, Inc. v. Cowles Publ. Co., 57 P.3d 1178, 1183 (Wash. Ct. App. 2002); Moe, 989 P.2d at 1158-1160. Because a

ORDER – 5

plaintiff must prove abuse of privilege by clear and convincing evidence (Moe, 989 P.2d at 1157; Doe, 24 P.3d at 398), on summary judgment he must "offer evidence sufficient to permit a reasonable trier of fact to find clear and convincing proof of abuse."  Alpine, 57 P.3d at 1188 (citing Herron v. Tribune Publ'g Co., 736 P.2d 249, 255 (Wash. 1987)) (internal quotation omitted).

       The court finds that, as to Ms. Weber and Ms. Freeman's publication of statements regarding Ms. Grentner's drug activities to other faculty members, Plaintiff has failed to make a prima facie case of abuse of privilege.  Although Ms. Grentner has provided evidence from which a jury could conclude that both Defendants told faculty members that Ms. Grentner was a drug dealer, she has not provided evidence that would permit a jury to determine by clear and convincing evidence that Defendants knew these statements were false or were recklessly indifferent to the possibility.  Ms. Grentner's evidence suggests that neither Ms. Weber nor Mr. Freeman was certain of the truth of allegations regarding her drug activities, but none of the evidence suggests that they knew the allegations was false.  See Moe, 989 P.2d at 1158 (granting summary judgment where there was "no evidence that [the defendant] acquired information that caused him to doubt the truth of the allegations.").  The evidence also would not permit a jury to find that the Defendants were recklessly indifferent to the falsity of the statements.  Similarly, Ms. Grentner has not provided evidence that could clearly and convincingly show that Defendants made the statement for a purpose other than advancing Northwest's common interest in tracking drug activity among its students.  There is no evidence that the Defendants published the statements to anyone other than faculty members who shared Northwest's common interest.  On this record, the court must grant summary judgment because Ms. Grentner has not made out a prima facie case of abuse of privilege.

       Plaintiff contends that additional discovery would permit her to obtain evidence of abuse of the privilege.  The court disagrees.  Plaintiff's counsel was aware that

ORDER – 6

1   Defendants claimed the common interest privilege when he deposed Ms. Weber and Mr.

2   Freeman.[2]  He thus had an opportunity to ask each of them questions to explore whether

3   they abused the privilege.  Under these circumstances, the court will not permit additional

4   discovery.

5   **C.    Factual Disputes Prevent Summary Judgment Against Ms. Grentner's  Claims**
       **that Ms. Weber told Northwest Students that Ms. Grentner Was a Drug**
6       **Dealer.**

7        As the court confirmed at oral argument, Ms. Grentner has only one piece of

8   evidence to support her claim that Ms. Weber told Northwest students that Ms. Grentner

9   was a drug dealer.  Daniel Rice, a Northwest instructor, testified that a Northwest student

10  had told him that Ms. Weber had told the student that Ms. Grentner was a drug dealer.

11  Adler Decl. Ex. 5 (Rice Depo. at 214-217).

12
    Defendants correctly note that Mr. Rice's statement contains hearsay, as it is
13
    offered in part to prove the truth of the student's out-of-court statement that Ms. Weber
14
    told him something.  <u>See generally</u> George Fisher, <u>Evidence</u> 336-340 (2002).  The court
15
    must nonetheless consider this hearsay on summary judgment because Ms. Grentner
16
    could correct the deficiency in form by having the student testify at trial.  <u>Fraser v.</u>
17
    <u>Goodale</u>, 342 F.3d 1032, 1036-1037 (9th Cir. 2003).  Therefore, because Defendants
18
    offer no argument that Ms. Weber's statements to students would be privileged, a jury
19
    must decide this portion of Ms. Grentner's defamation claim.
20

21

22

23
    _____
24      [2]Because Plaintiff was undisputedly aware that Defendants claimed the common interest
    privilege when he deposed Ms. Weber and Mr. Freeman, the court finds no prejudice arising
25  from Defendants' failure to raise privilege in their answer as an affirmative defense.  The court
    grants Defendants leave to amend their complaint to assert a privilege defense.  <u>See</u> <u>Owens v.</u>
26  <u>Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712-713 (9th Cir. 2001) (holding that, absent
    prejudice to plaintiffs, district court did not abuse discretion in allowing defendant to belatedly
27  assert affirmative defense).

28

ORDER – 7

**D.      Res Judicata Bars Plaintiff's Claims Based on the "Poisoning" Allegation.**

In the Kitsap County action, Ms. Grenter claimed that Mr. Freeman's December 17, 2002 open letter to the Northwest community was defamatory.  That action named only Northwest as a defendant; Mr. Freeman was not a party.  The trial court granted Northwest's motion for summary judgment, noting that "the law would require that the document itself, the letter, be sufficient to show that [Ms. Grentner] is clearly identified, and it is not in this case."  Russell Decl. Ex. E.  In an unpublished opinion, the Washington Court of Appeals affirmed.  Id. Ex. D.

Under the doctrine of res judicata, the court cannot consider Ms. Grentner's defamation claim arising from the December 17 letter.  Res judicata bars actions where a prior action brought to judgment had the same subject matter, the same cause of action, and the same parties.  Loveridge v. Fred Meyer, Inc., 887 P.2d 898, 900 (Wash. 1995).  Two causes of action are the same if:

> (1) prosecution of the later action would impair the rights established in the earlier action, (2) the evidence in both actions is substantially the same, (3) infringement of the same right is alleged in both actions, and (4) the actions arise out of the same nucleus of facts.

Civil Serv. Comm'n v. City of Kelso, 969 P.2d 474, 477 (Wash. 1999).

There is no doubt that the defamation claim in this action is identical to the Kitsap County action to the extent it arises from the December 17 letter.  The addition of Ms. Weber and Mr. Freeman as Defendants is of no significance.  Mr. Freeman is the director of Northwest and the author of the December 17 letter.  The state court holding that the letter could not support a defamation claim necessarily disposed of any claim against Mr. Freeman based on the letter.  See Feminist Women's Health Center ("FWHC") v. Codispoti, 63 F.3d 863, 867 (9th Cir. 1995) (applying res judicata under Washington law where the parties in prior state action were "virtually identical" to parties in federal action).

ORDER – 8

Plaintiff's efforts to distinguish the state court action are unavailing.  Ms. Grentner contends that the state court holding focused on the letter itself, and did not consider whether her suspension in January 2003 served to identify her as one of the unnamed students in the December 17 letter.  The Washington Court of Appeals rejected precisely this argument:

> Because the suspension followed the letter, it was not relevant to the circumstances under which the letter was released and it did not provide extrinsic facts from which the letter's audience could conclude [that] the letter referred to her as on of the students who threatened Weber.

Russell Decl. Ex. D (Order at 9 n.6).  The same opinion establishes that the state courts considered all evidence extrinsic to the December 17 letter, including that Northwest interviewed Ms. Grentner (among others) soon after the investigation and that other students were aware of that fact.  Id. (Order at 8).  There is no way that this court can decide Ms. Grentner's claim without relitigating matters that the Washington state courts have disposed of.  The court therefore holds that res judicata bars Ms. Grentner's defamation claim to the extent it is based on Defendants' publication of the December 17 letter and Ms. Grentner's subsequent suspension.[3]

Even if Ms. Grentner was asserting a facet of her defamation claim that was not before the Kitsap County court, the prohibition against claim splitting would defeat her action here.  Two claims are "sufficiently identical" for res judicata purposes when the second action would "destroy[] or impair[]" the "rights or interests established in the prior judgment," when the two actions require "substantially the same evidence," when both actions "involve infringement of the same right," and whether the two actions "arise out of the same transaction or nucleus of facts."  FWHC, 63 F.3d at 867 (citing Rains v.

---

[3]Ms. Grentner alleges that Northwest issued a notice of her suspension and its faculty members participated in conveying the notice to Ms. Grentner's disciplinary file.  The court holds that this is not, as a matter of law, a publication for purposes of a defamation claim.  Ms. Grentner's claims that a third party could gain access to that file are entirely speculative.

ORDER – 9

State, 674 P.2d 165, 168 (Wash. 1983)).  Whatever Ms. Grentner's defamation claim is, it unquestionably arises out of the same nucleus of facts as her claim in the Kitsap County action, it relies on the same evidence, and it seeks to vindicate the same reputational rights.  The court concludes that "[t]his case presents a clear example of claim splitting that the . . . concept of res judicata was designed to prevent."  Id. at 868.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion for summary judgment (Dkt. # 112) and GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 115).[4]  Plaintiff may pursue a defamation claim based on Ms. Weber telling Northwest students that Ms. Grentner was a drug dealer.  The court dismisses her remaining defamation claims.

DATED this 2nd day of June, 2005.

_____
JAMES L. ROBART
United States District Judge

---

[4]The parties engaged in a series of filings after the noting date for the instant motions. Plaintiff filed an improper motion to strike, an improper sur-reply, and two declarations after the noting date of the motion.  Defendants compounded the problem by responding with two supplemental declarations and a supplemental memorandum of their own.  The court notes that these filings are impermissible, and that neither party sought leave of court before filing them. The court has reluctantly considered the arguments and evidence presented in those filings, but cautions counsel that future improper filings will result in sanctions.

ORDER – 10